Donald WEIDMAN, Plaintiff,

v.

**FEDERAL HOME LOAN MORTGAGE CORPORATION, Defendant.**

No. CIV.A.02–7990.

United States District Court,
E.D. Pennsylvania.

Sept. 30, 2004.

Adam Steinfeld, Barry Taus, Bruce Gerstein, Garwin Bronzaft Gerstein And Fisher, L.L.P., New York, NY, Amelia F. Burroughs, John J. Stoia, Jr., Susan Collyer, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, Andrew S. Friedman, Wendy J. Harrison, Bonnett, Fairbourn, Friedman & Balint, PC, James A. Craft, Gammage & Burnham P.L.C., Phoenix, AZ, Christa L. Collins, Kendra C. Mancusi, Stephen M. Lawler, James Hoyer Newcomer & Smiljanich, P.A., Tampa, FL, Daniel Berger, Peter R. Kohn, Berger & Montague, P.C., James A. Francis, John Soumilas, Francis & Mailman,P.C., Philadelphia, PA, for Plaintiff.

Howard S. Lindenberg, Federal Home Loan Mortgage Corp., McLean, VA, Kevin M. Toth, Robert A. Nicholas, Reed Smith LLP, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court is the Motion for Summary Judgment of Defendant, Federal Home Loan Mortgage Corp., and the Motion for Partial Summary Judgment of Plaintiff, Donald Weidman. Plaintiff's Complaint asserts claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* For the reasons that follow, we will grant Defendant's Motion for Summary Judgment in its entirety; we will deny Plaintiff's Motion for Partial Summary Judgment on the issue of Defendant's liability as a consumer reporting agency.

### Factual Background

The following is a brief overview of the facts in this case, which are not in dispute. Additional facts will be provided throughout the Discussion section as they relate to the legal issues presented.

#### The Fair Credit Reporting Act

The Fair Credit Reporting Act (FCRA) was enacted in 1970 as an effort to regulate the burgeoning credit reporting industry. Its stated purpose is to require consumer reporting agencies (CRAs) to adopt reasonable procedures with respect to the "confidentiality, accuracy, relevancy, and proper utilization" of such information. 15 U.S.C. § 1681(b). In enacting the FCRA, Congress recognized "the crucial role that consumer reporting agencies play in collecting and transmitting consumer credit information, and the detrimental effects inaccurate information can visit upon both the individual consumer and the nation's economy as a whole." *Philbin v. Trans*

*Union Corp.*, 101 F.3d 957, 962 (3rd Cir. 1996).

### Freddie Mac and the Loan Prospector System

Defendant Federal Home Loan Mortgage Corporation (Freddie Mac) was created by Congress in 1970 to help stabilize the market for residential mortgages. Freddie Mac functions as a secondary purchaser of residential mortgages, thus increasing liquidity for the primary mortgage lenders. In the mid–1990's, Freddie Mac began using an automatic underwriting system called Loan Prospector to evaluate the credit risk of single-family mortgages. Freddie Mac currently licenses Loan Prospector to approved mortgage lenders, marketing the system as a way for lenders to determine if a loan, given a particular applicant's credit history, would likely meet Freddie Mac's requirements for purchase on the secondary market.

When a consumer applies for a mortgage, the lender or broker electronically submits personal and financial information provided by the applicant, as well as loan parameters, to the Loan Prospector system. Loan Prospector then obtains credit reports for the prospective borrower from the three major credit repositories, Trans Union, Equifax, and Experian. Freddie Mac, in licensing Loan Prospector, requires each lender to enter into a subscription agreement with the three repositories; Loan Prospector uses these lender-specific subscription numbers when obtaining credit reports. After obtaining the credit reports, Loan Prospector processes the information in those reports, as well as the information provided by the consumer, through a proprietary algorithmic formula. The result is a Loan Prospector Report (LP Report) which provides an evaluative summary of the applicant's credit risk, including a credit risk assessment of "accept" or "caution." An "accept" rating indicates that Freddie Mac would likely be willing to purchase the loan on the secondary market without additional analysis. A "caution" rating indicates that the lender, if it later wishes to sell the mortgage to Freddie Mac, must manually underwrite the mortgage according to Freddie Mac's guidelines. Freddie Mac's involvement in the application and evaluation process ends when the LP Report is delivered; at that point, the decision of whether to offer a mortgage or not rests with the lender.

Lenders who license Loan Prospector pay a $20 fee each time they use the system. The licensing agreement requires lenders to warrant that they will comply with all applicable laws in using Loan Prospector, that they have a permissible purpose to access the applicant's credit reports, and that they will notify the applicant of any adverse action they might take in accordance with the FCRA.

### Donald Weidman's Transactions

In 2000, Plaintiff Donald Weidman and his wife became aware of inaccuracies in their credit reports, and contacted their creditors, the three credit repositories, and even the Federal Trade Commission (FTC) in an effort to correct these errors. The Weidmans were able to correct some, but not all, of the inaccurate information in their credit reports.

In early 2001, the Weidmans began seeking a loan for a rental property in Philadelphia. Mrs. Weidman contacted BC Mortgage, a mortgage broker, and provided loan application information by telephone. As a result of this contact, two lenders, Lehman Brothers and Indy Mac, requested LP Reports on Donald Weidman. These LP reports, including five requested by IndyMac on February 5, 2003, all concluded with a "caution" rating. BC Mortgage informed Mrs. Weidman that the applications had been denied, but was not provided a copy of the LP Reports

or informed of Freddie Mac's evaluation of her and Plaintiff's credit.

In the spring of 2001, the Weidmans sought to refinance their home in Philadelphia through Greenpoint Mortgage Funding, Inc. Greenpoint submitted three "credit only" Loan Prospector requests. Greenpoint offered and Plaintiff accepted an $85,000 loan at 7.125% interest; Plaintiff has testified that he was satisfied with the terms of this loan.

### Summary Judgment Standard

In deciding a motion for summary judgment under Fed.R.Civ.P. 56(c), a court must determine "whether there is a genuine issue of material fact, and, if not, whether the moving party is entitled to judgment as a matter of law." *Medical Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir.1999); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–32, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When making this determination, a court must view the facts, and all reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). For its part, the non-moving party must, through affidavits, admissions, depositions, or other evidence, demonstrate that a genuine issue exists for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. An issue of material fact is said to be genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### Discussion

#### I. Consumer Reporting Agency Claims

Plaintiff charges Defendant with willful violation of the provisions of the FCRA

imposing procedural and notice requirements on consumer reporting agencies (CRAs).[1] A CRA is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties," and does so using means of interstate commerce. 15 U.S.C. § 1681a(f); *Todd v. Assoc. Credit Bureau Servs., Inc.*, 451 F.Supp. 447, 448 (E.D.Pa.1977). Defendant argues that it is not a CRA as defined by the statute, and so is not subject to the FCRA requirements with which it is being charged.

For the purposes of the cross-motions for summary judgment on this issue, this Court need not determine whether the Defendant falls within the § 1681a(f) definition of a CRA. Regardless of whether Defendant satisfies the technical definition of a CRA, the FTC's statements regarding joint users bring Defendant outside the realm of CRA responsibility.

#### A. Exception for Agents and Joint Users

■ Some entities that technically fall within the definition of "consumer reporting agency" may nonetheless be exempt from CRA requirements if they qualify as joint users. A joint user is an entity that shares consumer reports with others who are "jointly involved in decisions for which there are permissible purposes to obtain the reports." Appendix, FTC Commentary on the Fair Credit Reporting Act, 16 C.F.R. 600, sec. 603(f)(8). While both agents and principals are bound by the FCRA inasmuch as applicable, the FTC

---

1. Plaintiff alleges that Defendant has violated 15 U.S.C. § 1681i, § 1681e(b), § 1681e(c), and the relevant provisions of § 1681b— § 1681i relating to CRA responsibilities.

has specifically held that "an agent or employee that obtains consumer reports *does not become a consumer reporting agency* by sharing such reports with its principal or employer" in connection with the principal's permissible purposes. (emphasis added) *Id.* The FTC offers, as examples of joint involvement in decisions, "the agent's making a decision (or taking action) for the principal, or assisting the principal in making the decision (e.g., by evaluating information)." 16 C.F.R. 600, sec. 604(3)(E)(6).

Unlike Experian, Trans Union, and Equifax, paradigmatic examples of consumer reporting agencies, Defendant Freddie Mac is not in the business of collecting and storing the population's consumer credit information for distribution to a variety of users. Defendant contracts with individual lenders to provide them with the Loan Prospector service. When a lender submits a request as to a particular consumer, that consumer's credit data is requested from the three credit repositories, merged with information submitted by the lender, and presented by Loan Prospector as an evaluative credit summary. Each time the lender submits a request, this process is repeated afresh. Absent a lender's specific request, Defendant has no grounds, no permissible purpose, for accessing a consumer's credit information. Indeed, when Defendant's Loan Prospector system requests credit reports from the three repositories, it uses the lender's subscriber number, clearly indicating that the system is acting at the lender's behest.

In submitting a lender's request for a consumer's credit reports, Defendant is acting much like an employee who obtains a credit report, reviews it, and passes it along with an evaluation to his employer, who uses this evaluation to make the ultimate decision of whether to offer credit.

Defendant is sharing consumer reports with the lender, its principal, and assisting the principal by evaluating the consumer's credit information. As a matter of law, Defendant satisfies the definition of a joint user, and is consequently not subject to the FCRA's provisions relating to consumer reporting agencies.

### B. Resellers as Subject to CRA Provisions

Plaintiff asserts that, even if the FTC commentary on joint users brings Defendant outside the definition of a CRA, Defendant should nonetheless be held liable as a reseller for failing to comply with the obligations imposed on CRAs by sections 1681b through 1681l. Plaintiff cites an FTC statement that "[p]ersons who purchase consumer reports for resale (also known as 'resellers') are covered by the FCRA as consumer reporting agencies and have all the obligations of other CRAs, including the duty to reinvestigate information disputed by consumers." Prepared Statement of the Federal Trade Commission on the Fair Credit Reporting Act Before the Senate Committee on Banking, Housing, and Urban Affairs, July 10, 2003, 2003 FTC LEXIS 101, 14–15.

Considering the FTC statement on its own, Plaintiff's position seems tenable. However, this Court cannot address the FTC's commentary on reseller liability without considering how it relates to the FTC's position on joint users and agents. Defendant Freddie Mac and the Loan Prospector system provide an interesting illustration of this interplay. If Loan Prospector obtained consumer reports independent of any particular lender request, used them to create LP Reports, and stored these reports for later distribution to a variety of lenders, Defendant would no doubt qualify as a reseller. Where, instead, the system obtains con-

sumer reports in connection with a specific request from one contracting lender, creates a one-use LP Report associated with that particular request, and allows only the requesting lender to access the LP Report, the Defendant is acting as an agent of the lender. Just as an employee who obtains a credit report and shares it with his employer does not become a reseller by virtue of the fact that he is paid a salary, Defendant, as an agent of the contracting lender, does not become a reseller by virtue of the compensation it is paid for its services.

■ This Court does not see how the term "resale" can be applied in good faith to a situation where a principal, who is easily able to obtain a product on his own, chooses instead to delegate this duty to an agent, particularly where the agent has no authority to obtain the product outside the principal-agent relationship. Defendant Freddie Mac is a party to this kind of arrangement. Considering the FTC's statements regarding joint users in conjunction with its statements regarding resellers, the only logical conclusion this Court can make is that an agent qualifying as a joint user is exempt from consideration as a reseller for the purposes of the FCRA. In light of this conclusion, this Court will grant Defendant's motion for summary judgment as to the issue of whether Defendant is a reseller subject to CRA responsibilities and the provisions of § 1681e.

### II. Adverse Action Claims

■ Plaintiff further charges Defendant with willfully violating the notice provisions of 15 U.S.C. § 1681m, which apply to any person "taking adverse action" with respect to a consumer, where the adverse action is based "in whole or in part on any

information contained in a consumer report."[2] 15 U.S.C. § 1681m(a). Defendant claims that the notice requirements of § 1681m are inapplicable in this situation because it took no adverse action with respect to Plaintiff. The primary inquiry here is whether Defendant's provision of a Loan Prospector Report with a "caution" signal qualifies as an "adverse action." There is some dispute between the parties as to whether this Court should apply the § 1681a(k)(1)(A) definition of "adverse action," which references the Equal Credit Opportunity Act, or rather the broader definition outlined in the § 1681a(k)(1)(B)(iv) catch-all provision. We find that, regardless of which definition is applied, Defendant took no adverse action against Plaintiff.

This Court has established that Defendant, when requesting credit reports on behalf of a contracting lender, acts as an agent of that lender. For the same reasons that an agent providing a consumer report to his principal does not qualify as a CRA, we find that an agent using a consumer report for the purpose of "making a decision," "taking action," or "evaluating information" for his principal is not subject to § 1681m adverse action notification requirements. See 16 C.F.R. 600, sec. 604(3)(E)(6). At least one court has held that only a principal can be a "taker" of adverse action under § 1681m, even where the principal's agent uses a consumer report to make potentially adverse determinations. Ashby v. Farmers Group, Inc., 261 F.Supp.2d 1213, 1226 (D.Or.2003); see also Rausch v. Hartford Fin. Servs. Group, Inc., No. 01–1529, 2003 WL 22722061, *1–2, 2003 LEXIS 25892, 2–3 (D.Or.2003) (holding that, in the context of insurance, only an entity contracting with

---

**2.** Specifically, Plaintiff's complaint alleges violations of 15 U.S.C. § 1681m(a)(1), § 1681m(a)(2)(A), § 1681m(a)(2)(B), § 1681m(a)(3)(A), and § 1681m(a)(3)(B).

the policyholder and able to change the terms of his policy is statutorily capable of taking adverse action).

While we refrain from deciding at this point which definition of adverse action to apply in this case, we note that the approach taken by the United States District Court for the District of Oregon parallels in some respects the requirements for adverse action under the ECOA. Just as the court in *Rausch* found that no adverse action could be taken by an entity incapable of directly affecting the terms of an insurance policy, the ECOA excludes from its definition of adverse action a party's refusal to extend credit where the party is prohibited by law from doing so. 12 C.F.R. 202.2(c)(2)(iv). Where, as here, Defendant is statutorily barred from offering credit, it cannot be found to have "taken" adverse action, particularly where the evaluative signals in question are intended to be filtered by an autonomous decision-maker with the authority to offer credit. The ECOA further specifies that where a creditor is requested by a third party to extend credit to an applicant, any notification requirements may be satisfied by either the creditor or the third party, as long as the creditor's identity is disclosed. 15 U.S.C. § 1691(d)(4). This approach likewise comports with the FTC Commentary regarding joint users, as interpreted by the United States District Court for the District of Oregon in *Ashby*, which this Court finds persuasive.

■ Given that joint users are explicitly exempted from CRA responsibilities because they act at the behest of principals with primary control over the process of obtaining consumer reports and making credit decisions, this Court finds that joint users should be similarly exempted from § 1681m notification requirements. Particularly where, as here, consumers already receive notice of any adverse credit decision taken by a principal/lender, it would be duplicative to impose a similar burden on an agent providing evaluative assistance at the principal's request. In light of the above, we GRANT Defendant's motion for summary judgment with respect to Plaintiff's adverse action claims.

### III. The Permissible Purpose Claim

■ Plaintiff's Complaint sets out a cause of action based on willful violation of § 1681b(f), which prohibits persons from using or obtaining consumer reports unless they have a certified and authorized purpose. The FTC has held that agent of a party with a permissible purpose is likewise permitted to obtain a consumer report on behalf of his principal in connection with that purpose. Appendix, FTC Commentary on the Fair Credit Reporting Act, 16 C.F.R. 600, sec. 604(3)(E)(6). This Court has already established that Defendant, when requesting credit reports on behalf of a contracting lender, acts as an agent of that lender.

Plaintiff has made no claim that Lehman Brothers, IndyMac, or Greenpoint Mortgage Funding, the lenders who received reports through Loan Prospector in connection with Plaintiff's request for credit, had no permissible purpose to access his information. Even viewing the facts in the light most favorable to Plaintiff, it is clear that each lender had a permissible reason to access Plaintiff's credit reports. Acting as an agent of these lenders, Defendant, by law, is sheltered by their permissible purposes, and need not establish an independent purpose. For this reason, we grant Defendant's motion for summary judgment on Plaintiff's § 1681b(f) claim.

### Conclusion

An appropriate order follows.

### ORDER

AND NOW, this       day of September, 2004, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 42), Plaintiff's Motion for Partial Summary Judgment (Doc. No. 45), and all responses thereto (Docs. No. 49, 52, 54, 59, 60, 65, 66), it is hereby ORDERED, for the reasons stated in the accompanying Memorandum, as follows:

1) Defendant's Motion for Summary Judgment is GRANTED in its entirety;

2) Plaintiff's Cross–Motion for Partial Summary Judgment on the issue of Defendant's liability as a consumer reporting agency is DENIED.

IT IS FURTHER ORDERED that JUDGMENT is ENTERED in the above action for Defendant and against Plaintiff.