**Whitney WHITFIELD and Celeste Whitfield, and all others similarly situated**

v.

**RADIAN GUARANTY, INC.**

No. Civ.A. 04–0111.

United States District Court, E.D. Pennsylvania.

Oct. 21, 2005.

Douglas Bowdoin, Douglas Bowdoin PA, Orlando, FL, Joseph C. Kohn, Kohn Swift & Graf PC, Philadelphia, PA, Kathleen Clark Knight, Terry A. Smiljanich, W. Christian Hoyer, James Hoyer Newcomer & Smiljanich PA, Tampa, FL, for Whitney Whitfield and Celeste Whitfield, and all others similarly situated.

Dionna K. Litvin, David Smith, Schnader Harrison Segal and Lewis L.L.P., Philadelphia, PA, for Radian Guaranty, Inc.

## MEMORANDUM AND ORDER

SÁNCHEZ, District Judge.

The litigants in this case ask this Court to decide whether mortgage insurance sold by Radian Guaranty to Countrywide Home Mortgage was a consumer credit action, triggering the notice requirements of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.* Because Radian sold the mortgage insurance to Countrywide and not to Whitney and Celeste Whitfield, I find no violation of the FCRA as a matter of law and grant Radian's Motion for Summary Judgment. The Whitfields' Motion for Class Certification and Radian's motion challenging the Whitfields' standing are moot.

FACTS [1]

In this case the facts are undisputed. The Whitfields, both non-commissioned officers in the U.S. Air Force, contracted for a house to be built in Fredericksburg, Virginia, in 2001. Construction was complete in December 2002. The Whitfields needed to finance ninety-eight percent of the purchase price. The Whitfields placed their mortgage with Countrywide on the advice of a broker. Only when they missed a closing date did the Whitfields learn there were "some issues with like your credit report." Whitney Whitfield Dep., 2/9/05, p. 42. Whitfield discussed the credit report with his broker and sent a letter on February 5, 2003, to Countrywide explaining the problems on their credit report and asking for a chance to prove themselves credit-worthy. Countrywide, through its subsidiary, America's Wholesale Lender, loaned the Whitfields $259,400 of the $262,650 purchase price. The Whitfields settled on February 28, 2003.

As a condition for placing the mortgage, Countrywide required the Whitfields to pay Countrywide's cost of insuring the mortgage. Because the Whitfields had a less-than-stellar credit report and were financing such a large percentage of the purchase price, Countrywide turned to Radian Guaranty to protect its interests in case the Whitfields were to default. The communication between Countrywide and Radian is electronic, without human intervention.

On March 3, 2003, Countrywide electronically asked Radian Guaranty for private mortgage insurance to cover Countrywide's loan to the Whitfields. Radian's rates are presented on a grid for each category of borrower with the loan-to-value ratio and the amount of coverage the lender wants as the X and Y axes. Radian's rate sheets are filed with the state insurance department, in this case Virginia's. The lending institution, armed with a borrower's credit score, the loan to value ratio and the amount of exposure it is willing to tolerate, selects a private mortgage insurance premium from the grid. Typically, lenders select mortgage insurers after the loan closes.

The settlement sheet listed $905.74 a month for mortgage insurance under the heading of "Reserves deposited with lender." The reserves also included hazard insurance and property taxes. Countrywide gave the Whitfields a five page disclosure and selection sheet on mortgage insurance two days before settlement. A later letter explained to the Whitfields

---

**1.** The court has reviewed all of the evidence in the record and draws all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

their loan-to-value ratio required private mortgage insurance to "protect the lender or investor in the case of default." Countrywide letter, May 9, 2003. Countrywide told the Whitfields the loan to value ratio and their credit score determined the mortgage insurance rate of $903.58 a month, slightly lower than the figure shown on the settlement sheet.

Countrywide pays Radian each month in a lump sum for all of the policies it holds and includes file information on each policy. When the Whitfields refinanced their house, cancelling the Countrywide mortgage, Radian issued a pro rated refund check directly to the Whitfields. By the time the Whitfields refinanced their mortgage, the value of the house had appreciated enough that mortgage insurance was unnecessary.

The Whitfields brought this action in January 2004, alleging Radian failed to notify them of an adverse action based on their credit report in violation of Section 1681m of the FCRA. The Whitfields asked for certification of class of all others who paid more than the lowest rate for mortgage insurance and were not notified of the adverse action.

## DISCUSSION

A motion for summary judgment will only be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the burden of proving no genuine issue of material fact is in dispute and the court must review all of the evidence in the record and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Stephens v. Kerrigan,* 122 F.3d 171, 176–77 (3d Cir. 1997). The moving party must "bear the initial responsibility of informing the district court of the basis for its motion, and identify[ ] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal citations omitted). Once the moving party has carried its initial burden, the nonmoving party must then "come forward with specific facts showing there is a genuine issue for trial." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (citing Fed.R.Civ.P. 56(e)). A motion for summary judgment will not be denied because of the mere existence of some evidence in support of the nonmoving party. *Orsatti v. N.J. State Police,* 71 F.3d 480, 482 (3d Cir.1995). The nonmoving party must present sufficient evidence for a jury to reasonably find for it on that issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The nonmoving party cannot rest on his allegations without "any significant probative evidence tending to support the complaint." *Id.; see also Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989) (stating that a non-moving party must "adduce more than a scintilla of evidence in its favor ... and cannot simply reassert factually unsupported allegations contained in its pleadings"). The court must decide whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505. In considering a motion for summary judgment, a court does not resolve factual disputes or make credibility determinations and must view the facts and inferences in the light most favorable to the party opposing the motion.

*Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

■ The FCRA requires any entity or any entity under common ownership or affiliated by common corporate control to provide a consumer with notice of any adverse action. 15 U.S.C. § 1681m(b)(2). The FCRA defines an "adverse action" as "a denial or cancellation of, an increase in any charge for, or a reduction or other adverse or unfavorable change in the terms of coverage or amount of, any insurance, existing or applied for, in connection with the underwriting of insurance...." 15 U.S.C. § 1681a(k)(1)(B)(i). Radian agrees the Whitfields rate for mortgage insurance was not the lowest rate and that its increase was triggered by their credit score. Radian also agrees it did not give notice to the Whitfields. The question in this motion for summary judgment is whether Radian was obligated to give the Whitfields notice or, stated in the alternative, whether Radian's rate was an adverse action against the Whitfields.

Radian argues it did not take any adverse action under the FCRA with respect to the Whitfields when it sold mortgage insurance to Countrywide, there was no credit transaction between Radian and the Whitfields and the use of the Whitfields credit score was not an adverse action because there was no cancellation, change in coverage or premium increase.

The case law Radian cites for its argument that an initial premium is not an increase under FCRA and is, therefore, not an adverse action has been abrogated by *Reynolds v. Hartford Financial Services Group, Inc.,* 2005 WL 2416126 (9th Cir.2005), which held the adverse action notice requirements apply to initial rates for automobile and homeowners insurance. *Reynolds* abrogates *Razilov v. Nationwide Mutual Ins. Co.,* 242 F.Supp.2d 977, 989 (D.Or.2003) and *Ashby v. Farmers Group, Inc.,* 261 F.Supp.2d 1213, 1215 (D.Or. 2003),[2] both of which held parent companies were not liable for the actions of their subsidiaries.[3] The Ninth Circuit held in the consolidated cases in *Reynolds* all three insurers acted with reckless disregard of the consumers rights under FCRA in failing to provide notice of adverse action. *Reynolds,* 2005 WL 2416126, at *14. *Reynolds* is not analogous to the case at hand because *Reynolds* involves direct transactions between insurance companies and their customers.[4]

---

**2.** A court in this district relied on *Ashby* to find Federal Home Loan Mortgage Corporation (Freddie Mac) was not subject to the notice requirements of FCRA when it licensed Loan Prospector to approved mortgage lenders to determine if a loan, given a particular applicant's credit history, would meet Freddie Mac's requirements for purchase on the secondary market. *Weidman v. Federal Home Loan Mortg. Corp.,* 338 F.Supp.2d 571, 573 (E.D.Pa.2004). In a decision pre-dating *Reynolds,* the court found Freddie Mac was not subject to the FCRA because it was an agent of the lender. *Weidman,* 338 F.Supp.2d at 575.

**3.** *Reynolds* also abrogates *Mark v. Valley Ins. Co.,* 275 F.Supp.2d 1307 (D.Or.2003), which Radian cites for the proposition that an initial

insurance premium is not an increase under the FCRA. *See also Spano v. Safeco Corp.,* 140 Fed.Appx. 746, 747 (9th Cir.2005) (holding an initial rate is an adverse action, underwriters are liable and failing to provide notice is willful, overruling *Spano v. SAFECO Ins. Co. of America,* 215 F.R.D. 601 (D.Or.2003), which Radian cites).

**4.** Radian also cites *Karwo v. CitiMortgage,* 2004 WL 2033445 (N.D.Ill.2004), for the proposition privity is required to trigger the notice requirements of the FCRA. The court reconsidered its holding in *Karwo* that the catch-all provision governed mortgage insurance in *Karwo v. Citimortgage, Inc.,* 2005 WL 670640 (N.D.Ill.2005), which held the catch-all provision does not apply to private mortgage insurance, the insurance section does.

The Whitfields argue the relationship between a parent company and its subsidiaries is analogous to the relationship between Countrywide and Radian, triggering a notice requirement under *Reynolds.* The *Reynolds* court held "[w]ith regard to insurance transactions, liability attaches whenever an adverse action is taken in connection with the underwriting of insurance." *Reynolds,* 2005 WL 2416126, at *10 (quoting 15 U.S.C. § 1681a(k)(1)(B)(i)). Both *Ashby* and *Razilov* involved an affiliation between the insurer and the underwriter. In *Ashby,* the district court granted summary judgment to Farmers Group Inc. on grounds it acted only as an agent for Farmers Insurance Company of Oregon. *Ashby,* 261 F.Supp.2d at 1215. In *Razilov,* the court granted summary judgment because it was a parent company which set rates for it subsidiary, which in turn wrote the policy. *Razilov,* 242 F.Supp.2d at 983. The *Reynolds* court held "any person" included rate-setting parent companies and initial rates constitute adverse action. *Reynolds,* 2005 WL 2416126, at *10; 15 U.S.C. § 1681m(b)(2). The holding in *Reynolds* is not controlling here because Radian and Countrywide are not affiliated.

Three cases across the country considering whether a private mortgage insurer owes an adverse action notice to a credit-impaired borrower have denied summary judgment on facts similar to those here. I respectfully disagree with my brethren in Florida and Kentucky. In the most recent, *Broessel v. Triad Guaranty Insurance Corp.,* 2005 WL 2260498 (W.D.Ky. 2005),[5] in facts strikingly similar to the ones at hand, Countrywide submitted Broessel's loan information to the Federal National Mortgage Association's (Fannie Mae) Desktop Underwriter which electronically tells lenders whether Fannie Mae would consider purchasing the loan on the secondary market. *Broessel* at *1. Fannie Mae informed Countrywide it would require the borrower to pay mortgage insurance. *Id.* Broessel agreed to pay $342.61 for the mortgage insurance premium as part of her regular mortgage payment, which Countrywide then used to pay the mortgage insurer. *Broessel* at *2. Countrywide selected Triad to provide the mortgage insurance the day after the closing at a rate that was not Triad's lowest. *Id.* Triad did not send an "adverse action" notice to Broessel. *Id.*

The *Broessel* court analyzed the claims under the insurance prong of the FCRA, not the catch-all or credit provisions and found a higher initial rate would be an adverse action. *Id.* at *3. With those two steps, I agree. My analysis diverges from that of the *Broessel* court on the question of the relationship between the consumer and the mortgage insurance issuer. The *Broessel* court looked at the question of privity of contract and rightfully found privity between the parties is not a condition precedent to triggering the notice provision of the FCRA. *Broessel* at *5. *See also* 15 U.S.C. § 1681m(a); *Treadway v. Gateway Chevrolet Oldsmobile Inc.,* 362 F.3d 971, 974 (7th Cir.2004); *Crane v. American Home Mortgage, Corp.,* 2004 WL 1529165 (E.D.Pa.2004).

I agree with the *Broessel* court it is disingenuous for the mortgage insurer to try to avoid responsibility under FCRA on

*Karwo,* 2005 WL 670640, at *1. The court declined to decide whether higher rate was an adverse action because the plaintiff rejected the insurance and cancelled the loan the next day.

**5.** Also brought by the Whitfields' attorneys James, Hoyer, Newcomer & Smiljanich. The same firm also brought *Price v. United Guaranty Residential Insurance Co.,* 2005 WL 265164 (N.D.Tex.2005), which is pending.

grounds it was the receiver not the provider of the borrower's credit score. In this case, it is a distinction without a difference because the mortgage insurer's obligation would be the same whether it provided or received a credit report, if it had an obligation. The transaction in *Broessel* and in the case at hand was between the mortgage insurer and the lender, not the borrower. The *Broessel* court chose to deny summary judgment.[6]

In Florida, the court in *Glatt v. The PMI Group, Inc. et al.,* No. 03–326 (M.D.Fla. January 2, 2004), declined to grant a Motion to Dismiss under Rule 12(b)(6). On facts substantially identical to those in *Broessel* and the case at hand, the defendants argued the complaint should be dismissed because setting a rate for mortgage insurance was not an increase for the purposes of the FCRA. Slip op. at 3. The court made short work of that argument, suggesting whether it was an increase was "a factual matter which cannot be resolved on a motion to dismiss." Slip op. at 6. The question has been resolved in the Ninth Circuit, at least, by *Reynolds,* which held a higher initial insurance premium triggers the FCRA.

The *Glatt* court relied on a decision two weeks earlier, also in the Middle District of Florida, *Preston v. Mortgage Guaranty Insurance Corp. of Milwaukee,* No. 03–111 (M.D.Fla. December 19, 2003). Again on substantially similar facts, the court denied the defendant's motion for judgment on the pleadings, finding the insurance section applicable and no statutory requirement of privity. *Preston,* slip op. at 8. The court reasoned it would be premature to determine whether the cost of mortgage insurance constituted an adverse action. *Id.*

■ The courts in all three cases, *Broessl, Glatt,* and *Preston,* moved directly to the question of whether the mortgage insurer took adverse action with respect to a consumer without considering whose risk was insured. Private mortgage insurance does not protect a borrower against his own inability to pay; mortgage insurance protects the lender against a default by the borrower. The rate is set by the degree of risk the insurer undertakes. That degree of risk is determined in part by the credit score of the borrower, but the action is only indirectly adverse to the borrower. The rate set is the rate the mortgage insurer charges the lender not the borrower.

The relationship between mortgage insurer and lender is clearer in *Hinton v. Federal National Mortgage Ass'n,* 945 F.Supp. 1052 (S.D.Tex.1996). *Hinton* is a deceptive trade practices case, not a FCRA case, but the question is the same: whether a lender was obliged to notify the borrower it could have waived the cost of mortgage insurance. The plaintiff in *Hinton* was obligated under his mortgage to escrow taxes, insurance and mortgage insurance payments. At the time of the suit, the mortgage was held by the Federal National Mortgage Association and serviced by Magnolia Federal Bank. The *Hinton* court found "[w]ith the rise in the secondary market for mortgages, nongovernmental insurers expanded to cover other segments of the business. As a consequence of government regulations, the cost of mortgage insurance is a separate item on the loan disclosure to the borrower." *Id.* at 1055. The *Hinton* court resolved its question when it found "[t]he terms of its payment are clearly specified in the deed of trust and other papers the borrower signs." *Id.* The court stated "[a]lthough lenders 'charge' the borrower for mort-

---

6. The case is scheduled for trial after November 1, 2005.

gage insurance premiums, the lender is the insured, not the borrower. If the borrower defaults, he is not protected at all by the mortgage insurance because, after paying the lender's claim, the insurer may sue the borrower on the note." *Id.* The court held that, at most, the borrower was an incidental beneficiary who had no cause of action. *Id.* at 1058. I agree with the *Hinton* court that the contract at issue in these cases is between the mortgage insurer and the lender.

■ The Whitfields ask this Court to accept that they paid premiums to Radian because "every month, 100% of the mortgage insurance premium amount of $903.58 was disbursed from Plaintiffs' escrow account and went to Radian with a detailed accounting." Pls.' Resp. at 4. I agree with the Whitfields' argument that no contractual relationship is necessary to trigger the protections of the FCRA and that any analysis of the transaction at hand comes under the insurance prong and not the credit prong of the FCRA.[7] That agreement does not, however, require me to find the rate charged Countrywide for mortgage insurance was an action adverse to the Whitfields. The insurance transaction was one between Radian and Countrywide. The insurance transaction had the effect of determining what a mortgage would cost the Whitfields only to the extent Countrywide is risk averse. The premium paid allowed the Whitfields to obtain a mortgage, but the beneficiary of the insurance was Countrywide.

■ Under the FCRA, a user of credit information must advise the consumer of the name and address of the consumer reporting agency that provided the report when the consumer is adversely affected by the dissemination of information provided for employment purposes. 15 U.S.C. § 1681m.[8] The aim of this notice requirement is "to enable the subject of a consumer report to request disclosure from the reporting agency of the nature and scope of the information in his file." *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 149 (5th Cir.1983).

7. Because of the resolution in favor of Radian on this motion for summary judgment, I need not consider the effect of a counteroffer on analysis of the notice requirement under the credit prong.

8. 15 U.S.C. § 1681m. **Requirements on users of consumer reports**

(a) Duties of users taking adverse actions on basis of information contained in consumer reports. If any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall—

(1) provide oral, written, or electronic notice of the adverse action to the consumer;

(2) provide to the consumer orally, in writing, or electronically—

(A) the name, address, and telephone number of the consumer reporting agency (including a toll-free telephone number established by the agency if the agency compiles and maintains files on consumers on a nationwide basis) that furnished the report to the person; and

(B) a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken; and

(3) provide to the consumer an oral, written, or electronic notice of the consumer's right—

(A) to obtain, under section 1681j of this title, a free copy of a consumer report on the consumer from the consumer reporting agency referred to in paragraph (2), which notice shall include an indication of the 60–day period under that section for obtaining such a copy; and

(B) to dispute, under section 1681i of this title, with a consumer reporting agency the accuracy or completeness of any information in a consumer report furnished by the agency.

The notice requirement, while not onerous, is not insignificant. Section 1681m would require Radian to enter into correspondence with consumers with whom the company had no direct contact. Radian did not become Countrywide's mortgage insurer until three days **after** the Whitfields settled on their house. An adverse action notice from Radian could have the effect of interfering with a contractual relation between Countrywide and Whitfield. If Countrywide had given the Whitfields notice before settlement (which arguably it did), the Whitfields would have had a meaningful opportunity to correct their credit report, fulfilling the purpose of the FCRA. Notice from Radian after settlement would be meaningless.

Because I find Radian's insurance relationship was with Countrywide and not the Whitfields, I will grant Radian's motion for summary judgment. The Whitfields motion for class certification and Radian's motion for summary judgment for lack of standing are moot. I will enter an appropriate order.