

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-30-2007

# Whitfield v. Radian Guaranty Inc

Precedential or Non-Precedential: Precedential

Docket No. 05-5017

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Whitfield v. Radian Guaranty Inc" (2007). *2007 Decisions*. Paper 480.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/480

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-5017

_____

WHITNEY WHITFIELD;
CELESTE WHITFIELD,
on behalf of themselves and all others similarly situated,
                                                        Appellants

v.

RADIAN GUARANTY, INC.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cv-00111)
District Judge: Honorable Juan R. Sanchez

_____

Argued January 19, 2007

Before: SLOVITER, RENDELL, and
CUDAHY,[*] Circuit Judges

(Filed:  August 30, 2007)

_____

_____

     [*] Hon. Richard D. Cudahy, United States Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

Joseph C. Kohn
Christina D. Saler
Kohn, Swift & Graf, P.C.
Philadelphia, PA l9107

Terry A. Smiljanich   (Argued)
Kathleen Clark Knight
Tamra C. Givens
James, Hoyer, Newcomer & Smiljanich, P.A.
Tampa, FL 33609

     Attorneys for Appellants


David Smith    (Argued)
Nancy Winkelman
Theresa E. Loscalzo
Jessica W. Troiano
Schnader Harrison Segal & Lewis LLP
Philadelphia, PA l9103

     Attorneys for Appellee


William Blumenthal
     General Counsel
John F. Daly
     Deputy General Counsel for Litigation
Lawrence DeMille-Wagman   (Argued)
Federal Trade Commission
Washington, DC 20580

     Attorneys for Amicus Curiae,
     Federal Trade Commission in Support of Appellants

Jeremiah S. Buckley
Matthew P. Previn
Jonathan D. Jerison
Kirk D. Jensen
Buckley Kolar, LLP
Washington, DC 20037

      Attorneys for Amici Curiae,
      Mortgage Insurance Companies of America and
      Mortgage Bankers Association, and Consumer Mortgage
      Coalition in Support of Appellee


OPINION OF THE COURT


SLOVITER, Circuit Judge.

The issue presented in this appeal is whether the adverse action notice provisions of the Fair Credit Reporting Act ("FCRA") apply to the actions of a company that provides mortgage guaranty insurance ("MI") to a mortgage lender at a premium rate that is determined, in part, by information in the mortgage borrower's credit report. Our decision is informed in part by the recent opinion of the United States Supreme Court in Safeco Insurance Co. v. Burr, 127 S. Ct. 2201 (2007).

**I.**

In 2001, Whitney and Celeste Whitfield (the "Whitfields") contracted to build a new home in Virginia. They wanted to finance all but 2% of the purchase price of their new home. The Whitfields, who had a poor credit history, enlisted a mortgage broker to facilitate the process and he helped them contact the eventual mortgagee, Countrywide Home Mortgage.

Countrywide agreed to provide the Whitfields with a mortgage which loaned them 98% of the purchase price on condition that the Whitfields pay for mortgage insurance. After the mortgage papers were signed, Countrywide requested appellee Radian Guaranty, Inc. to provide the mortgage

3

insurance, which Radian agreed to do for a monthly charge of $905.74.[1] Countrywide provided the Whitfields with a disclosure statement that informed them the cost of the mortgage insurance. Radian based the price of the mortgage insurance on the loan-to-value ratio of the mortgage and on Mr. Whitfield's credit score, which Countrywide obtained from Mr. Whitfield's consumer credit report. In the mortgage closing packet, Countrywide gave the Whitfields the credit report upon which it had relied.

In accordance with the mortgage guaranty insurance process, Radian prepares and files its rate schedule for mortgage guaranty insurance with the Virginia Bureau of Insurance. After the Bureau has approved Radian's proposed rates, lenders, including mortgagees, are free to access the MI's rate schedule and place their orders online by entering the borrower's credit score and loan-to-value ratio. If Radian accepts the lender's application for guaranty insurance, it sends a confirmation letter to the lender. On the other hand, if it rejects the application it sends an adverse action notice to the borrower. Three days after Countrywide closed the mortgage with the Whitfields, it submitted an electronic order to purchase mortgage guaranty insurance from Radian. Countrywide then passed this cost along to the Whitfields, as had been agreed upon at settlement.

The Whitfields were required to set up an escrow account to pay the cost of the premiums. Countrywide paid the premiums to Radian, regardless of whether the Whitfields' escrow account contained sufficient funds to pay the cost of the premium. There were, however, sufficient funds in the Whitfields' escrow account; in fact the Whitfields were due, and did receive, a refund for unearned premiums directly from Radian in the amount of $542.15.

Radian conceded that had Mr. Whitfield's credit score been higher, it would have charged a lower premium for the mortgage insurance, and in turn, the Whitfields would have paid

---

[1] The Whitfields state that the premium was $903.58, but we need not resolve the difference.

a lower premium for mortgage insurance. The Whitfields were not provided with an adverse action notice by Radian. Indeed, it is Radian's standard policy not to send adverse action notices to borrowers when the lender's application for MI is approved.

The Whitfields filed suit in January 2004, alleging that Radian did not provide them with an adverse action notice as required by the FCRA, 15 U.S.C. § 1681m(a). They asked the District Court to certify a class, composed of borrowers who paid more than the lowest rate for private mortgage insurance and were not notified of the adverse action. The District Court granted Radian's motion for summary judgment, which had the effect of rendering the Whitfields' motion for class certification moot. Whitfield v. Radian Guaranty, Inc., 395 F. Supp. 2d 234 (E.D. Pa. 2005). The Whitfields filed a timely notice of appeal.

## II.

The District Court had jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

This court exercises plenary review of the District Court's grant of Radian's motion for summary judgment. Further, this court applies the same standard in reviewing a motion for summary judgment as the District Court. MBIA Ins. Corp. v. Royal Indem. Co., 426 F.3d 204, 209 (3d Cir. 2005). A motion for summary judgment should only be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). All reasonable inferences must be drawn in favor of the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III.

### A. Relevant Statutory Provisions

The FCRA requires that if a person who is a permissible user of information from a consumer report (also known as a credit report) takes any adverse action against an individual,

such person shall notify the individual of the adverse action. We set out the relevant provision:

> If any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall –
> (1) provide oral, written, or electronic notice of the adverse action to the consumer;
> (2) provide to the consumer orally, in writing, or electronically –
>> (A) the name, address, and telephone number of the consumer reporting agency . . . that furnished the report to the person; and
>> (B) a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken; and
> (3) provide to the consumer an oral, written, or electronic notice of the consumer's right –
>> (A) to obtain, under section 1681j of this title, a free copy of a consumer report on the consumer from the consumer reporting agency referred to in paragraph (2), which notice shall include an indication of the 60-day period under that section for obtaining such a copy; and
>> (B) to dispute, under section 1681i of this title, with a consumer reporting agency the accuracy or completeness of any information in a consumer report furnished by the agency.

15 U.S.C. § 1681m(a).

The definition of "adverse action" in the FCRA includes an insurance prong, a credit prong, and a catch-all provision. Section 1681a(k)(1)(A) is referred to as the credit prong, § 1681a(k)(1)(B)(I) is referred to as the insurance prong, and §1681a(k)(1)(B)(iv) as the catch-all provision. The District Court analyzed the transaction under the insurance prong, and we agree that the transaction at issue falls within the insurance

6

prong.

The District Court also stated that charging a higher initial rate for insurance would be an "adverse action." Whitfield, 395 F. Supp. 2d at 237. The FCRA defines the term "adverse action" as it applies to an insurance company as follows:

> (k) Adverse action. –
>     (1) Actions included. – The term "adverse action" –
>         . . . .
>         (B) means –
>             (i) a denial or cancellation of, an increase in any charge for, or a reduction or other adverse or unfavorable change in the terms of coverage or amount of, any insurance, existing or applied for, in connection with the underwriting of insurance[.]

15 U.S.C. § 1681a(k)(1)(B)(i).

The Act defines "consumer report," so far as relevant here, as:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, [or] credit capacity . . . which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . credit or insurance to be used primarily for personal, family, or household purposes[.]

15 U.S.C. § 1681a(d)(1)(A).

The District Court noted that the transaction at issue in this case was between Radian, the mortgage insurer, and Countrywide, the lender. It cited approvingly the decision in Hinton v. Federal National Mortgage Ass'n, 945 F. Supp. 1052 (S.D. Tex. 1996), where the court, on facts substantially similar

7

to those here, stated that the lender is the insured, not the borrower, because the contract is between the mortgage insurer and the lender.  Id. at 1055.  The Hinton court held that the borrower was an incidental beneficiary who had no cause of action.  Id. at 1058.  The District Court in this case granted summary judgment for Radian because it found that Radian's insurance relationship was with Countrywide and not the Whitfields.

## B.  **The *Safeco* decision**

The Safeco decision, 127 S. Ct. 2201, encompassed two separate cases, Safeco Insurance Co. v. Burr and GEICO General Insurance Co. v. Edo, both of which involved challenges to the failure of the insurance company to provide the adverse action notification required under the FCRA.  In the course of its opinion, the Court read the statutory language "willfully fails to comply" as reaching reckless FCRA violations and rejected the insurance companies' argument that the use of the term "willfully" limits liability under § 1681n(a) to knowing violations.  Id. at 2210.  The Court noted that if it were to adopt the companies' interpretation, the use of "knowingly" in § 1681n(a)(1)(B), which sets higher damages for knowing violations, would be superfluous.  Id.

The Court next resolved a dispute between the courts of appeals by holding that the "increase" referred to in the statute encompasses initial rates for new applications.  Id. at 2211.  The Court determined that a rate is "based on" a credit report if there is a but-for causal relationship, i.e., the credit report must have been the basis for the increase.  Id. at 2212.  Finally, the Court rejected the Government's argument that the baseline should be the best possible premium rate.  Id. at 2213.  Instead, the Court held that the baseline is what the applicant would have been charged if the company had not taken the credit score into account, i.e., the neutral rate.  Id. at 2213-14.

Reviewing the record in the two cases before it, the Court held that because the rate that GEICO offered to Edo was one he would have received if his credit score had not been taken into account, it had not violated the statute.  Id. at 2214.  There was

8

no record evidence as to any neutral rate with respect to Safeco, but the Court held that plaintiffs could not prevail on their claim against Safeco for willful violation of the FCRA because Safeco had not acted recklessly. Id. at 2215. Safeco had interpreted the statutory language to mean that no notice was required for its initial dealing with the insured, and the Court stated that although this was an incorrect interpretation it was not a reckless one. Id.

Following the announcement of the opinion in Safeco, this court asked the parties to comment on the effect of the Safeco decision on the issues in this case. Radian responded with essentially the same analysis applied by the District Court. It focused on the fact that it had "sold a commercial insurance product to a mortgage lender [Countrywide], not to a consumer." Letter from David Smith, counsel for Radian Guaranty Inc., to the Court, at 1 (June 14, 2007) (on record with the Court). It stated that the Whitfields were not a party to the insurance transaction, that it completed its transaction with Countrywide without ever receiving or considering the Whitfields' consumer report, that the only transaction to which the Whitfields were a party was a separate credit transaction with Countrywide that was completed three days before Countrywide ever contacted Radian about purchasing mortgage guaranty insurance for itself, and that therefore the District Court was correct in holding that because Radian sold the mortgage insurance to Countrywide and not to the Whitfields, there was no violation of the FCRA as a matter of law. See id. at 4-7.

Radian then argued that in any event it did not act willfully as a matter of law, relying on the Supreme Court's Safeco decision that the insurance company (Safeco) had acted without "authoritative guidance" and therefore did not act recklessly. Id. at 5. It also argued that it was not required to give notice because it had not received any information contained in any consumer report about the Whitfields, and therefore it did not take any action based in whole or in part on any information contained in a consumer report. Id. at 6.

In their response to the court's inquiry, the amici, the Mortgage Insurance Companies of America, stated that under

the precedent of <u>Safeco</u>, Radian could not have violated the FCRA willfully, thereby continuing their support for Radian's position in this case. Letter from Kirk D. Jensen, counsel for the Mortgage Insurance Companies of America, to the Court, at 2-3 (June 13, 2007) (on record with the Court).

Not surprisingly, the Whitfields view the <u>Safeco</u> decision differently. Emphasizing the Supreme Court's ruling that willful conduct must be shown to have been "objectively unreasonable," the Whitfields noted that whether Radian acted willfully is not an issue on appeal as the question formed no basis for the District Court's ruling and was not an issue raised on appeal by either party. Letter from Terry A. Smiljanich, counsel for the Whitfields, to the Court, at 2 (June 13, 2007) (on record with the Court). Because "the record is incomplete as to all issues involving determining whether defendant Radian's actions were or were not 'objectively unreasonable,'" the Whitfields argued that we should remand this case to the District Court. <u>Id.</u> They noted the absence of evidence that Radian (unlike GEICO) had no neutral score, and "that the Whitfields were punished with extremely high mortgage insurance premiums specifically because their credit scores were judged by Radian to warrant such high premiums." <u>Id.</u> at 3. They also noted that nothing in the <u>Safeco</u> decision provides any basis for concluding that the District Court was correct in "grafting either a 'privity' requirement or a 'direct/indirect' category onto the FCRA." <u>Id.</u> Thus, the Whitfields argued that we should allow them to proceed with the case.

Finally, the Federal Trade Commission, which entered the case as amicus curiae on behalf of the position of the Whitfields, argued that "nothing in <u>Safeco</u> should have any impact on [our] decision," and agreed with the Whitfields that we should reverse the District Court's decision. Letter from Lawrence DeMille-Wagman, counsel for the Federal Trade Commission, to the Court, at 3 (June 13, 2007) (on record with the Court). It noted that nothing in the Supreme Court's <u>Safeco</u> decision addresses Radian's defense that it had no obligation to provide the Whitfields with an adverse action notice. <u>Id.</u>

### C. **Analysis**

The Supreme Court's <u>Safeco</u> opinion disposes of one issue that had arisen in the District Court but was uncontested on appeal, namely whether an initial premium can be termed an increase in any charge for insurance for purposes of the FCRA's definition of adverse action. Radian had argued that its sale of mortgage guaranty insurance to Countrywide did not fall within the FCRA's definition of "adverse action" because the Whitfields never had existing insurance with Radian. In Radian's brief, it argued that it never denied, cancelled, increased, reduced, or otherwise changed the term of any insurance with respect to the Whitfields.

As we noted above in discussing the District Court's decision, it agreed that a higher initial rate would be an adverse action. Without amplification, it relied on the decision to that effect in <u>Broessel v. Triad Guar. Ins. Corp.</u>, No. Civ. A. 1:04CV-4M, 2005 WL 2260498, at *1 (W.D. Ky. Sept. 15, 2005). The Supreme Court's <u>Safeco</u> decision clarifies that issue, which had been the subject of differing views in the lower courts. The Supreme Court agreed with the government that the statutory "increase" reaches a first-time rate. It stated that "there is nothing about insurance contracts to suggest that Congress might have meant to differentiate applicants from existing customers when it set the notice requirement; the newly insured who gets charged more owing to an erroneous report is in the same boat with the renewal applicant." <u>Safeco</u>, 127 S. Ct. at 2211. It thus held that "the 'increase' required for 'adverse action,' 15 U.S.C. § 1681a(k)(1)(B)(i), speaks to a disadvantageous rate even with no prior dealing; the term reaches initial rates for new applicants." <u>Id.</u> at 2211-12.

Radian argued in its brief before us that it was not required to give notice because it did not take any action "based in whole or in part on any information contained in a consumer report." <u>See</u> 15 U.S.C. § 1681m. Radian argued that it never had any information from a consumer reporting agency, but that its rate was based in part on the credit score that it received from Countrywide.

We reject that technical construction of the statutory language. In discussing that statutory requirement the Supreme

11

Court stated "[i]n common talk, the phrase 'based on' indicates a but-for causal relationship and thus a necessary logical condition." Safeco, 127 S. Ct. at 2212. Radian conceded that the Whitfields' credit score was a component of the premium that it charged Countrywide for the mortgage guaranty insurance. The statutory requirement that the adverse action must be "based . . . on" a credit report is in the passive voice. See 15 U.S.C. § 1681m. There is no doubt that Radian's premium for the mortgage insurance that the Whitfields were required to pay was "based . . . on" information in the credit report, albeit information supplied to Radian from Countrywide.

There is no reason to limit the statutory obligation to provide notice to those cases where the insurance company directly reads the credit report and exclude those cases where the insurance company indirectly is advised of the results of the credit report. The relevant fact is that the insurance company used the credit information, i.e., the credit score, in establishing the applicable premium for insurance that the borrowers were required to pay. It makes no difference to the purpose of the Act if the credit information was derived from Radian's own reading of the consumer credit report or was transmitted to it by Countrywide based on its reading of the consumer credit report. In either event, the consumer report would have been the cause of the adverse action and thus the notice requirement applies.

Finally, we come to the crux of the District Court's holding: its determination that the FCRA notice requirement was inapplicable because there was no privity between the Whitfields (the ultimate consumers) and Radian. The privity issue did not arise in Safeco because both Safeco and GEICO had direct relationships with the borrowers. In this case, we have an intermediate party, Countrywide, the mortgagee.

This precise factual situation arose in Broessel, where Countrywide was the mortgagee and it selected Triad to provide the mortgage insurance the day after the closing. 2005 WL 2260498, at *2. In its opinion, referred to by the District Court here, the Broessel court rejected the insurance company's argument that it was not required to give notice because there was no contractual relationship between it and the consumer.

12

The court stated:

> Privity of contract is not a requirement under the plain language of FCRA. See 15 U.S.C. § 1681m(a). FCRA states in pertinent part "that any person who 'takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report' must provide 'notice of the adverse action to the consumer.'" [15 U.S.C. § 1681m(a)] Triad is "any person" and the Court has held that it took an adverse action. The adverse action was with respect to a consumer. The only question remaining is whether the action was based on information contained in the consumer's credit report.

2005 WL 2260498, at *5 (certain internal citations omitted). We agree.

Triad, the insurance company in the Broessel case, argued that it took no action based on the plaintiff's credit report but relied solely on the information contained in the insurance application provided by Countrywide. Id. at *4. By coincidence, Countrywide was also the mortgagee in this case and Radian makes the same argument that the insurance company made in Broessel. The District Court in Broessel rejected that argument:

> Notwithstanding the automatic nature of the transaction, the determination of Broessel's mortgage insurance premium was based on information which Triad used to determine the premium for the mortgage insurance. Part of the information used was Broessel's credit score which was derived from her credit report. Whether that evaluation was done electronically or otherwise is immaterial. The ultimate decision as to the amount of her premium was based, in whole or in part, on a consumer report. 15 U.S.C. § 1681m(a).

13

Id. at *5.

We agree with that analysis. If we were to accept Radian's argument, responsibility to provide notice would be limited to the mortgagee. The Court of Appeals for the Ninth Circuit rejected that interpretation of the statute. As the court stated in Reynolds v. Hartford Fin. Ins. Servs., 435 F.3d 1081, 1095 (9th Cir. 2006), rev'd sub nom. on other grounds Safeco, 127 S. Ct. 2201, the definition of "any" (in the statutory provision "any person who takes an adverse action is liable") "includes the plural." Id. at 1095. Moreover, the court of appeals noted that "[w]ith regard to insurance transactions, liability attaches whenever an adverse action is taken 'in connection with the underwriting of insurance.'" Id. (quoting 15 U.S.C. § 1681a(k)(1)(B)(i)). The court noted that the broad "'in connection with' language confirms that a variety of entities may be liable." Id. It further stated that "[n]o provision in the statute nor comment in the legislative history suggests that Congress intended that only a single company be responsible under FCRA when a consumer is charged an increased rate for insurance." Id. Although Reynolds presented a parent-subsidiary relationship and was discounted by the District Court for that reason, see 395 F. Supp. 2d at 238, we see no basis to make such a distinction.

We must construe the language of the statute in light of its clear purpose. As the court stated in Treadway v. Gateway Chevrolet Oldsmobile Inc., 362 F.3d 971, 981 (7th Cir. 2004), "Congress enacted the FCRA in 1970 to address abuses in the consumer reporting industry." Those abuses were that reliance was being placed on consumer reporting agencies that were too often reporting inaccurate information. Id. The FCRA as well as the Equal Credit Opportunity Act were designed to insure that agencies report accurate information. Id. at 982.

If Radian had sent the Whitfields the required notice of adverse action, the Whitfields would have been in a position to correct any inaccurate information in their credit report and thereby lower the price they would have to pay for credit in future transactions. Indeed, the record shows that the Whitfields might even have been able to lower the mortgage guaranty insurance premium that they were obligated to pay in the present

14

transaction with Countrywide. The mortgage papers were signed three days before Countrywide placed the request for insurance with Radian, but the record does not indicate that the Whitfields had no opportunity to adjust or correct the premium after the mortgage transaction was set. In fact, the Whitfields' obligation to pay any mortgage insurance premium was eliminated long before their responsibility under the mortgage ceased.

Finally, we turn to Radian's argument that it cannot be held liable under the FCRA because it did not act willfully, as the Supreme Court held in <u>Safeco</u> with respect to Safeco. The situations may not be analogous. The Supreme Court held that Safeco's reading of the statute to exclude initial rate offers for new insureds was not objectively unreasonable. <u>Safeco</u>, 127 S. Ct. at 2215. Radian too, following Safeco's lead, argues that "just as was the case in <u>Safeco</u>, the rate for the mortgage guaranty insurance that Radian sold Countrywide was an initial rate for a new insurance policy." Letter from David Smith, counsel for Radian Guaranty Inc., to the Court (June 14, 2007) (on record with the Court). We leave it to the District Court on remand to consider whether the evidence in the record supports Radian's claim that it did not willfully violate the statute because it reasonably believed an initial rate offer was not an increase for purposes of the definition of adverse action under the FCRA. Radian also argued that it did not act willfully and thus cannot be liable under the FCRA because its reading of the statute led it to conclude that it had no responsibility for sending an adverse action notice because its relationship was with Countrywide rather than with the Whitfields.

Radian's reading would be more plausible if it could argue that it had no information with respect to the identity of the purchasers and therefore was not in a position to send the required notice. However, the record shows that Radian did in fact send notice directly to prospective purchasers when it declined to grant insurance covering their mortgages. It appears that Radian sent those notices pursuant to the credit prong of the FCRA – 15 U.S.C. § 1681a(k)(1)(A). That is a distinction without a difference. The essential factual concession is that Radian was in a position to identify and notify ultimate

purchasers notwithstanding that it had no direct relationship with them.

We do not suggest that a factfinder could not or would not determine that Radian did not act willfully. Instead, we hold that whether it did so is a factual issue, not a question of law, and it therefore cannot be decided either on appeal or by the District Court as a matter of law.

## IV.

For the reasons set forth above, we will reverse the summary judgment entered by the District Court and remand for further proceedings in accordance with this opinion.

_____